## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANTONIO VALDEZ,**<br><br>Defendant. | Case No. 09-cr-00281-10 (CRC) |

## MEMORANDUM OPINION

In June 2011, Defendant Antonio Valdez was convicted by a jury of conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846.  Former Chief Judge Richard W. Roberts subsequently sentenced Valdez to a term of 240 months of incarceration followed by 120 months of supervised release.  Currently before the Court is Valdez's *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255, as well as his motion for appointment of counsel.  In his § 2255 motion, Valdez asserts several claims of error in his trial and sentencing, as well as ineffective assistance of counsel.  The government opposes both of Valdez's motions, arguing that each of his claims is procedurally barred and/or fails on the merits.  For the reasons that follow, the Court will deny Valdez's motions.

### I.       Background

Valdez was arrested by the FBI on November 6, 2009 as part of a conspiracy to transport heroin from Toronto, Canada to Washington, D.C. for further distribution in the United States.  Gov't's Opp'n Def.'s Mot. Vacate Sent. 2, ECF No. 409.  The FBI obtained evidence of Valdez's substantial role in the conspiracy through court-authorized wiretaps of the cellphones of his supplier, Mouloukou Toure.  Id. at 5.  Valdez was indicted, along with several co-conspirators, on October 27, 2009.  The indictment charged Valdez with two counts: (1)

conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in

violation of 21 U.S.C. § 846; and (2) tampering with a witness, victim, or informant by physical

force or threat, in violation of 18 U.S.C. §1512(a)(2)(A).  Re-typed Indictment, ECF No. 286-1.

In June 2011, a jury found Valdez guilty of the drug charge but not guilty of the witness

tampering charge.  Verdict Form, ECF No. 288.  He was sentenced to 240 months of

incarceration, the statutory mandatory minimum.

Valdez timely appealed, and the United States Court of Appeals for the District of

Columbia Circuit affirmed his conviction and sentence.  See United States v. Valdez, 723 F.3d

208 (D.C. Cir. 2013).  On appeal, Valdez argued that the District Court erred by permitting the

government to introduce Rule 404(b) evidence of his prior drug activity and by denying Valdez's

motion requesting severance of the drug conspiracy charge from the witness tampering charge.

The D.C. Circuit held that the District Court did not abuse its discretion on either claim.  Id. at

208.

On May 16, 2015, Valdez filed a motion for appointment of counsel for his "appeal

affairs."  Def.'s Mot. Appoint Counsel, ECF No. 392.  The Court ordered that the motion be

treated as a motion to appoint counsel for the purpose of pursuing a motion to vacate under 28

U.S.C. § 2255.  Min. Order, October 9, 2014.  While the motion was pending, Valdez filed a

substantive motion to vacate his sentence under § 2255.  Def.'s Mot. Vacate Sent., ECF No. 402.

Both motions were timely, as they were received within one year of the date on which Valdez's

judgment became final.[1]  But because Valdez's claims are either procedurally barred or lack

---

[1] The parties agree that Valdez's deadline to file a motion to vacate under § 2255(f)(1) was
January 13, 2015, one year after the Supreme Court denied Valdez's petition for rehearing.  The
government asserts that Valdez's motion is time-barred because it was not filed in the Clerk's
office until February 9, 2015.  However, pro se petitioners' filings are considered filed as soon as
the filings are deposited into the prison mail system.  See Houston v. Lack, 487 U.S. 266, 270

merit, the Court will deny his motion to vacate his sentence and, accordingly, his motion for appointment of counsel as well.

## II.     Analysis

In habeas corpus proceedings, the Court may appoint counsel "for any financially eligible person who . . . is seeking relief under section . . . 2255 of title 28" if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). In determining whether appointment of counsel serves the interests of justice, courts must consider:

> 1) the petitioner's likelihood of success on the merits, 2) the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved, and 3) the factual complexity of the case and whether the petitioner has the ability to investigate undeveloped facts.

United States v. King, 4 F. Supp. 3d 114, 125 (D.D.C. 2013) (quoting United States v. Washington, 782 F. Supp. 2d 1, 3 (D.D.C. 2011)). Therefore, because a motion to appoint counsel depends in part on the viability of the petitioner's claims, the Court will first analyze the merits of Valdez's § 2255 motion to vacate his sentence before addressing his motion for appointment of counsel.

### A.   Motion to Vacate under § 2255

A prisoner serving a federal sentence may move the court to vacate his sentence if he believes that it "was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack. . . ." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence his right to relief. See United States v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).

---

(1988). Valdez's motion was received in the District Court's mail room on January 12, 2014, and thus was deposited into the prison mail system at least by that date. It is therefore timely.

A petitioner cannot raise any claim collaterally that has already been litigated on direct appeal. United States v. Greene, 834 F.2d 1067, 1070 (D.C. Cir. 1987). Collateral review may be appropriate, however, when there has been an intervening change in the law, when necessary to "rectify an error not correctable on direct appeal, or when exceptional circumstances excuse a failure to assert the error on appeal." Id. (quoting Garris v. Lindsay, 794 F.2d 722, 727 (D.C. Cir. 1986)). Even if the petitioner may re-raise a claim, he is unlikely to succeed if he was previously unsuccessful on identical claims. See Washington, 782 F. Supp. 2d at 3 (citing Engberg v. Wyoming, 265 F.3d 1109, 1122 (10th Cir. 2001)). Additionally, a petitioner may not raise any claim that he has procedurally defaulted by failing to raise it on direct review, unless he can demonstrate "cause" and "prejudice," Bousley v. United States, 523 U.S. 614, 622 (1998) (quoting Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977)) (internal quotation marks omitted), or "actual[] innocen[ce]," id. (quoting Murray, 477 U.S. at 496) (internal quotation marks omitted).

Valdez raises five claims in his motion to vacate his sentence: (1) the trial court failed to make a finding on the quantity of drugs attributed to him; (2) the grand jury selection proceedings were unlawful; (3) the wiretap evidence was illegally obtained; (4) the trial court erroneously admitted evidence of Valdez's prior drug conviction under Rule 404(b); and (5) he was denied his right to effective assistance of counsel. Def.'s Mot. Vacate Sent. 2. The majority of these claims are procedurally barred and, in any event, none of them succeeds on the merits. The Court will therefore deny Valdez's motion to vacate his sentence.

1. Whether the Trial Court was Required to Make a Specific Finding on Drug Quantity

Valdez was sentenced under 21 U.S.C. § 841(b), which sets penalty ranges for convictions under § 841(a) for certain minimum quantities of various types of drugs. Section

841(b)(1)(A)(i) prescribes a minimum penalty of ten years for convictions involving one kilogram or more of heroin.  Valdez argues that a portion, if not all, of the drugs for which he was held responsible should have been attributed to his codefendant rather than to him.  He asserts that the Court erred in failing to make a finding at sentencing regarding the specific quantity of drugs for which he alone was responsible.  See Mot. Vacate Sent. 5–6.  This argument fails to take into account the well-settled principle that a conspirator may be held vicariously liable for his co-conspirator's acts that fall within the scope of the conspiracy and were reasonably foreseeable as a "necessary or natural consequence of the unlawful agreement." Pinkerton v. United States, 328 U.S. 640, 648 (1946); see also id. at 647 ("The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the . . . principle[] . . . recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all."); United States v. Ballestas, 795 F.3d 138, 146 (D.C. Cir. 2015) ("[A]s long as a substantive offense was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,' then a conspirator will be held vicariously liable for the offense committed by his or her coconspirators." (quoting United States v. Washington, 106 F.3d 983, 1012 (D.C. Cir. 1997)) (internal quotation marks omitted)).

The jury found Valdez guilty of "[c]onspiracy to distribute and possess with intent to distribute [one] kilogram or more of heroin."  Verdict Form, ECF No. 288.  At trial, Valdez's partner David Diaz Garcia testified that he had regularly worked with, and on behalf of, Valdez to procure heroin from Toure and that Valdez paid for the purchases and had his own customers to whom he distributed the drug.  Trial Tr. 9–10, June 13, 2011, ECF No. 299.  Diaz Garcia also estimated that, in total, Toure had sold him and Valdez between 1.1 and 1.2 kilograms of heroin.

See id. at 22–23.  Toure testified that Valdez and Diaz Garcia had purchased about 1.5 kilograms

of heroin from him.  Trial Tr. 54–55, June 14, 2011, ECF No. 402-1.  Valdez argues that Diaz

Garcia "obtain[ed] drugs on his own behalf" and thus that Valdez should not be held responsible

for the total amount allegedly purchased from Toure.  Def.'s Mot. Vacate Sent. 6.  However,

because the government presented evidence that Diaz Garcia and Valdez had worked together to

obtain heroin from Toure, a reasonable fact-finder could have concluded that the total heroin

allegedly purchased from Toure was attributable to Valdez, notwithstanding Diaz Garcia's

involvement.  See Ballestas, 795 F.3d at 146 (attributing overt acts of other coconspirators to

defendant).

Further, while Valdez contends that the sentencing Court should have made an

independent determination of drug quantity, that question was properly left to the jury.  In

Alleyne v. United States, 133 S. Ct. 2151 (2013), the Supreme Court held that "[f]acts that

increase the mandatory minimum sentence are . . . elements [of the offense that] must be

submitted to the jury and found beyond a reasonable doubt."  Id. at 2158.  Mandatory minimum

sentences under 21 U.S.C. § 841(b) are determined by the drug quantity of conviction.  Under

Alleyne, then, drug quantity is a question of fact that must be submitted to the jury.[2]  Cf. United

States v. Fields, 242 F.3d 393, 395–96 (D.C. Cir. 2001) ("[B]efore a defendant can be sentenced

to any of the progressively higher statutory maximums that are based on progressively higher

quantities of drugs specified in subsection[] 841(b) . . . , the Government must state the drug type

---

[2] Valdez cites Sixth Circuit precedent to support his argument that drug quantity is properly
determined by the sentencing judge.  Def.'s Mot. Vacate Sent. 12–13 (citing United States v.
Cox, 565 F.3d 1013 (6th Cir. 2009); United States v. Jinadu, 98 F.3d 239, 247 (6th Cir. 1996)).
In Cox, which predates Alleyne, the Sixth Circuit reasoned that § 841(b) is a "penalty provision
only and does not constitute an element of the offense to be determined" by the fact finder.  565
F.3d at 1016.  To the extent that this precedent conflicts with Alleyne, it does not apply to this
case.

and quantity in the indictment, submit the required evidence to the jury, and prove the relevant drug quantity beyond a reasonable doubt.").

The jury determined that Valdez was responsible for one kilogram or more of heroin. At sentencing, the Court accepted the undisputed portions of the Presentence Investigation Report as Findings of Fact, which included the estimated quantity of 1.2 to 1.3 kilograms. See Gov't's Opp'n Def.'s Mot. Vacate Sent. 26. Because the Court was statutorily bound by the mandatory minimum, it properly sentenced Valdez to twenty years, and under Alleyne, it was not required to make an additional finding on drug quantity.[3]

### 2.  Grand Jury Selection Proceedings

Valdez asserts that the methods used to empanel the grand jury violate various provisions of the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., and he requests discovery to investigate this claim. He did not raise this issue at trial or on appeal. Generally, a petitioner may not raise a grand jury challenge for the first time in a habeas proceeding. See 28 U.S.C. § 1867 (setting forth "exclusive means" for challenging grand jury selection, see id. § 1867(e)); Davis v. United States, 411 U.S. 233, 242 (1973) (grand jury defectiveness claim could not be raised on habeas when statutory avenue for raising the claim pretrial was not followed). Valdez provides no justification for failing to raise this issue previously. Nor does he provide any factual support for the claim that the grand jury selection process was defective; he asserts only that the grand jury "was an illegal[ly] constituted body" and that the jurors' names "were not

---

[3] In any event, Valdez is procedurally barred from raising this claim because he failed to raise it on direct appeal and has not shown cause for this failure. Nor has he demonstrated that he was prejudiced by the Court's not having made an independent finding on drug quantity since there is no reason to believe that its finding would have differed significantly from that of the jury. See Bousley, 523 U.S. at 622.

publicly drawn from a jury box." Def.'s Mot. Vacate Sent. 6. The Court will therefore dismiss this claim.

### 3.  Lawfulness of Wiretap

Valdez claims that the wiretap evidence used by the government at his trial should not have been admitted and that his motion to suppress should have been granted. Def.'s Mot. Vacate Sent. 9–10. However, there is no evidence in the record that he filed a motion to suppress the evidence obtained through the wiretap, and he did not challenge the admission of the wiretap at trial. He also failed to raise this issue on direct appeal and offers no explanation for this failure. He is thus precluded from raising this issue in the current proceeding. See Bousley, 523 U.S. at 622.

Valdez's argument that the wiretap was illegal lacks merit in any event. First, there is no evidence that the warrant was improperly issued. The procedures for obtaining authorization for a wiretap require law enforcement agents to submit an affidavit to a judge of competent jurisdiction, see 18 U.S.C. § 2518(1), who may then approve the wiretap based on probable cause, see id. § 2518(3). At trial, an FBI agent testified that, upon submission of an affidavit, Judge Richard Leon authorized the wiretap. Gov't's Opp'n Def.'s Mot. Vacate Sent. 21–22. The defense did not address the validity of the wiretaps on cross examination. See id. at 72–87. Valdez also claims that the government failed to immediately seal the contents of the wiretap, but he presents no evidence supporting this assertion.

### 4.  Evidence of Prior Conviction

Valdez next contends that the Court erred in admitting evidence of his prior state conviction for possession of cocaine pursuant to Rule 404(b). See Fed. R. Evid. 404(b)(2) (providing that evidence of a crime or other wrong may be admissible to show, *inter alia*,

knowledge consistent with having committed that crime or other wrong).  The government filed a motion to admit 404(b) evidence to demonstrate Valdez's knowledge that coded language in the wiretapped phone conversations referred to drugs.  Mot. Admissibility Fed. R. Evid. 404(b) Evid. 3, ECF No. 124.  Valdez did not file a response to this motion, and it was granted by the Court.

This issue was also addressed on direct appeal and decided in the government's favor. See Valdez, 723 F.3d at 208.  The D.C. Circuit concluded that the District Court did not abuse its discretion in admitting the 404(b) evidence because the court "gave reasoned explanations for its decisions" and appropriate limiting instructions to the jury.  Id.  Because this claim was already litigated and adjudicated on direct appeal, and there was no intervening change in the law, Valdez may not re-raise the claim on collateral review.  See Greene, 834 F.2d at 1070.

### 5.   Ineffective Assistance of Counsel Claim

Finally, Valdez argues that he was denied effective assistance of counsel because his trial counsel failed to raise two of the issues discussed above: the sentencing Court's lack of finding on the quantity of drugs and the illegality of the grand jury proceedings.  Def.'s Mot. Vacate Sent. 19–20.  Valdez further alleges that his counsel failed to investigate whether the jury pool from which the trial jury was drawn was composed in contravention of the Jury Selection and Service Act.  See id.

To assert a successful ineffective assistance of counsel claim, a defendant must show both that his attorney "made errors so serious" that she was no longer "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that he was prejudiced as a result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Id. at 694. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

As noted above, the Court was not required to make a separate finding on the quantity of drugs attributable to Valdez, so counsel's failure to move the Court to do so does not constitute error, let alone error that warrants relief. Valdez also claims—without factual support—that his counsel failed to investigate the quantity of drugs for which he alone was responsible. Def.'s Mot. Vacate Sent. 20. However, also as discussed above, discovering that Diaz Garcia had purchased a certain amount of the heroin on his own would not necessarily lessen Valdez's liability, since as a member of a conspiracy, Valdez could be held vicariously liable for that amount. See Pinkerton, 328 U.S. at 648; Ballestas, 795 F.3d at 146. Thus, even if counsel's purported failure to investigate did constitute error, it did not prejudice Valdez.

Regarding the grand jury procedures, Valdez asserts that his attorney failed to "conduct an investigation into the facts surrounding the charges" and to challenge the composition of the grand jury. Def.'s Mot. Vacate Sent. 19. Because Valdez does not proffer sufficient facts to indicate a basis on which counsel could have challenged the procedures, he has not made the requisite showing that counsel departed from professional standards. Even if Valdez were able to prove that his counsel made serious errors, he has not established that but for those errors, the outcome would be any different; he has not offered support for any theory of prejudice. Had the Court determined that the grand jury was selected improperly after counsel raised the issue, the Court would not have been obligated to dismiss the indictment, but rather could have allowed for any error to be corrected. See 28 U.S.C. § 1867(d) ("If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court

shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate.").

Similarly, Valdez has not provided any facts related to the composition of the trial jury pool, nor has he shown prejudice. Even if the Court had for some reason found that the composition of the jury pool violated the Jury Selection and Service Act, there is no "reasonable probability" that, upon selection of a new jury, the outcome of the case would have been different. Strickland, 466 U.S. at 694. Given the high bar set by Strickland, Valdez's ineffective assistance of counsel claim falls well short.

B.   Appointment of Counsel

As noted previously, when determining whether appointment of counsel is in the interest of justice, courts consider the likelihood of the petitioner's success on the merits, the petitioner's ability to articulate his claims *pro se*, and the factual complexity of the claims and the petitioner's ability to investigate undeveloped facts. King, 4 F. Supp. 3d at 125. Each of those factors cuts against appointment of counsel here. The Court has rejected each of Valdez's claims, so he has not demonstrated likelihood of success on the merits. As for his *pro se* status, the Court has had little trouble discerning the crux of his claims. And while Valdez's incarceration certainly limits his ability to investigate undeveloped facts, his claims primarily present legal conclusions and are easily disposed of, and he has not alleged any facts that require further investigation. Further, all of Valdez's claims, apart from his ineffective assistance of counsel claim, are procedurally barred. As such, investigation of these claims would not be helpful to him. Because Valdez's claims do not succeed on the merits and his investigation of undeveloped facts would be futile, appointment of counsel at this stage would not serve the interests of justice.

**III.     Conclusion**

For the foregoing reasons, the Court will deny Valdez's motion for appointment of

counsel and his § 2255 motion to vacate his sentence.  An order accompanies this memorandum

opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   ___August 2, 2016___